Carl Wayne BUNTION, Relator,

v.

The Honorable William T. HARMON, Respondent.

No. 71286.

Court of Criminal Appeals of Texas, En Banc.

April 15, 1992.

Ray Speece, Houston, for relator.

David L. Botsford, Austin, David Cunningham, Houston, for respondent.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Relator Carl Wayne Buntion seeks a writ of mandamus from this Court directing the trial judge in his capital murder case, the Honorable William T. Harmon (of the 178th district court, Harris County), to vacate an order replacing appointed trial counsel. If relief is granted, relator's trial counsel would be able to continue to represent relator on direct appeal, in accordance with the wishes of both relator and his trial counsel.

## I.

A brief rendition of the facts is necessary to our analysis and disposition of relator's claim. The Harris County Grand Jury indicted relator on July 12, 1990, for capital murder. Tex. Penal Code § 19.03(a)(1). Allen Tanner and J. Philip Scardino were appointed as relator's counsel on June 29, 1990. John Kiernan was subsequently appointed co-counsel on November 29, 1990. On September 14, 1990, respondent granted relator's motion for change of venue and the trial was moved to Fredericksburg, the county seat of Gillespie County. Jury selection began on November 10, 1990, but was interrupted because of two motions by relator's counsel to recuse respondent.

Judge Stephen Abels denied relator's first recusal motion on December 5, 1990; Judge Murray V. Jordan denied the second recusal motion on January 8, 1991, shortly before the end of jury selection, and the case was subsequently tried to its conclusion. On January 24, 1991, the jury answered "yes" to the special issues set forth in Article 37.071(b) of the Texas Code of Criminal Procedure, and relator was sentenced to death.

At sentencing, respondent announced that Henry Oncken would represent relator on appeal. Scardino and Kiernan filed several post-trial pleadings including a motion for new trial and a third motion to recuse respondent, because relator desired to call respondent as a witness in the motion for new trial. The third motion to recuse was denied by Judge Robert Montgomery.

On April 8, 1991, relator, Scardino, and Kiernan appeared before respondent on their motion for a new trial. Respondent denied the motion and reasserted for the record that Oncken would represent relator on appeal. Scardino then objected to the appointment of Oncken, insisting that he and Kiernan intended to represent relator on appeal. He stated that relator also wished to continue the attorney-client relationship through the appellate process. The following exchange then transpired:

[BY THE COURT]: It's just not my practice, as certainly the last two capital murders, by virtue of the experience I had on past capital murders, Mr. Scardino, not to appoint trial counsel to represent the defendant on appeal. That not only is my feeling in capital cases but it's also my strong preference in non-capital cases. I just prefer to appoint other counsel on appeal. Please take this as no reflection of my feelings toward you.

[BY MR. KIERNAN]: Judge, might I address the Court on one matter?

[THE COURT]: Should Mr. Oncken feel as though he needs additional help to handle this appeal he can certainly take that up with the Court. If he wishes

additional assistance I'll consider his request but you all's responsibilities as trial counsel for Mr. Buntion are concluded as of this date and Mr. Oncken will represent Mr. Buntion on appeal. Mr. Allen Tanner will continue to represent Mr. Buntion on the remainder of his non-capital cases. Court will be adjourned.

An affidavit signed by relator on June 1, 1991, confirmed his desire to retain Scardino and Kiernan as his attorneys on appeal. In the affidavit, relator averred: "I have all the confidence in the world in Casey and Phil and wish to continue my attorney-client relationship with them during my appeal."

## II.

Relator contends that respondent is under a "ministerial" duty to vacate his order withdrawing Scardino and Kiernan as counsel for relator, and this, coupled with the fact that relator has no adequate remedy at law, entitles relator to a writ of mandamus to compel respondent to vacate the illegal order. By contrast, respondent insists that under Article 26.04(a) of the Texas Code of Criminal Procedure, the replacement of appointed counsel is accomplished at the discretion of the trial judge. Thus, respondent contends, because a judge's discretionary judgement is required, the act cannot be subject to a writ of mandamus—mandamus being limited to "ministerial" as opposed to discretionary acts.

Respondent argues that pursuant to Article 26.04(a) of the Texas Code of Criminal Procedure, he has the discretion to relieve relator's trial counsel of their duties.[1] Respondent cites this article for the proposition that "the legislature intended to authorize a trial court judge to relieve an appointed attorney of his duties in at least some circumstances." Respondent also argues that the general policy of removing trial counsel from appellate representation is sound policy because a defendant's trial counsel would generally be less likely to raise issues of ineffective assistance of trial counsel as a point of error on appeal.

## III.

To establish an entitlement to mandamus relief, a relator must satisfy two requirements: (1) there must be no adequate remedy at law to redress his alleged harm; and (2) the relator must have a *clear* right to the relief sought.[2] *State ex rel. Sutton v. Bage,* 822 S.W.2d 55, 57

---

1. Tex.Code Crim.Proc. art. 26.04(a) provides in relevant part:

    An attorney appointed under this subsection shall represent the defendant until charges are dismissed, the defendant is acquitted, appeals are exhausted, or the attorney is relieved of his duties by the court or replaced by other counsel.

2. This requirement has often been couched in terms of requiring that the judicial conduct from which relief is sought be "ministerial" in nature: "Historically, this Court has stated that to be entitled to the extraordinary relief of mandamus, the relator must establish ... (1) that the act sought to be compelled is purely *ministerial,* as opposed to discretionary or judicial in nature...." *Stearnes v. Clinton,* 780 S.W.2d at 219 (emphasis supplied). In *State ex rel. Curry v. Gray,* 726 S.W.2d 125, 128 (Tex.Cr.App.1987), we held that:

    [A] ministerial act is one which is accomplished without the exercise of judgment or discretion. If there is any discretion or judicial determination attendant to the act, it is not ministerial in nature. Nor is a ministerial

act implicated if the trial court must weigh conflicting claims or collateral matters which require legal resolution.

Similarly, in *State ex rel. Thomas v. Banner,* 724 S.W.2d 81, 83 (Tex.Cr.App.1987) (emphasis added), we stated, "The question we must then answer, to decide if the instant cases involves a ministerial act, is whether the respondent had the *authority* to" act as he did. Black's Law Dictionary (6th ed. 1990) (citations omitted) defines "ministerial act" as follows:

    An act is "ministerial" when its performance is positively commanded and so plainly prescribed as to be free from doubt. [An o]fficial's duty is "ministerial" when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts. [A "ministerial" act is o]ne which a person ... performs under a given state of facts in a prescribed manner in obedience to the mandate of legal authority without regard to or the exercise of his ... own judgment upon the propriety of the act being done.

Thus it is clear that a "ministerial" act is the antithesis of a "discretionary" act. See *Stearnes,*

(Tex.Cr.App.1992); *Stearnes v. Clinton*, 780 S.W.2d 216 (Tex.Cr.App.1989). Relying on our decision in *Stearnes*, we hold that relator has satisfied both of the two prerequisites to mandamus relief.

We turn first to the question of whether relator has an adequate remedy at law for the alleged harm caused by respondent's actions. In *Stearnes v. Clinton*, 780 S.W.2d at 225–26, we held that the remedy of appeal was simply inadequate to redress a trial judge's decision to remove appointed trial counsel. Admittedly, *Stearnes* dealt with the removal of counsel during the trial, while in the instant case respondent replaced trial counsel at the conclusion of the trial; however, we see no substance in this distinction with regard to the appropriateness of mandamus relief:

> Having appointed counsel, a criminal defendant should not be subjected to a trial *and appeal* process without the counsel he had grown to accept and gain confidence in. The use of the appellate process in this situation would be too burdensome and would only aggravate the harm and most likely result in a new trial compelling relator to again endure a trip through the system, creating in turn

needless additional cost to the taxpayers of this state.

*Id.* at 225 (emphasis supplied). We find the rationale of *Stearnes* equally persuasive in the instant case, and we hold that relator has no adequate remedy at law for respondent's arbitrary replacement of relator's appointed counsel.

■ Having determined that relator has satisfied the first prerequisite to mandamus relief, we now address the second requirement: whether relator had a clear right to the relief sought. As stated above, respondent argues that Tex.Code Crim.Proc. art. 26.04(a) was intended "to authorize a trial court judge to relieve an appointed attorney of his duties in at least some circumstances." We do not dispute this assertion. However, the circumstances under which a trial judge may replace appointed trial counsel are narrowly circumscribed by the state and federal constitutions. See *Stearnes, supra,* and cases cited therein.

■ The right of the accused to counsel, both at trial and on appeal, is fundamental.[3] *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796–97, 9 L.Ed.2d

supra; see also, *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). A "ministerial" act is one which is clearly compelled by the facts and legal authority extant in a given situation. Moreover, a so-called "discretionary" function may become "ministerial" when the facts and circumstances dictate but one rational decision: "When it is decided that a trial judge exercising a 'discretionary' authority has but one course to follow and one way to decide then the discretionary power is effectually destroyed and the rule purports to grant such [discretionary] power is effectively repealed." *Jones v. Strayhorn*, 321 S.W.2d 290, 295 (Tex. 1959), quoted in *Johnson,* supra at 917. Thus, a *theoretically* discretionary act may nonetheless be "ministerial" in *application* if the facts and circumstances of a given case lead to but one rational course of action. See *Braxton v. Dunn*, 803 S.W.2d 318, 320 (Tex.Cr.App.1991) ("Mandamus will issue where there is but one proper order to be entered.").

If the facts and circumstances of this case were such that they effectively extinguished any discretion respondent had regarding the removal of trial counsel, his actions then became "ministerial" in nature and any deviation by

respondent from the one clearly dictated course of action would have been a per se abuse of discretion.

3. Once the attorney-client relationship is established, any potential disruption of the relationship is subject to careful scrutiny. Thus, it is well-settled that the attorney-client relationship may not be severed by either the attorney or the client without justifying the severance to the trial court. See *Ward v. State*, 740 S.W.2d 794, 797 (Tex.Cr.App.1977) (although trial counsel does not become a defendant's "counsel for life", the attorney-client relationship must be maintained if so doing will protect defendant's rights—even if the appointment was for the trial only); *Thomas v. State*, 550 S.W.2d 64 (Tex.Cr. App.1977) (defendant may not sever an existing relationship unless he is able to demonstrate adequate cause); *Solis v. State*, 792 S.W.2d 95 (Tex.Cr.App.1990) (attorney may not withdraw simply on the grounds of personality conflicts or disagreements); *Steel v. State*, 453 S.W.2d 486, 487 (Tex.Cr.App.1970) (allowing an attorney to bow out whenever he chooses would frustrate the accused's right to adequate representation); *Viges v. State*, 508 S.W.2d 76 (Tex. Cr.App.1974) (even if an appointed attorney

799 (1963); *Smith v. State,* 513 S.W.2d 586, 587 (Tex.Cr.App.1974); *Ex parte Campbell,* 494 S.W.2d 842, 844 (Tex.Cr.App. 1973); *Curry v. State,* 488 S.W.2d 100, 103 (Tex.Cr.App.1972); *Ex parte Perez,* 479 S.W.2d 283, 284 (Tex.Cr.App.1972). Although an indigent defendant does not have the right to counsel of his own choosing, once counsel is appointed, the trial judge is obliged to respect the attorney-client relationship created through the appointment. *Stearnes v. Clinton,* 780 S.W.2d at 221. The attorney-client relationship between appointed counsel and an indigent defendant is no less inviolate than if counsel is retained. *Id.* at 222.

■ Given the fundamental nature of an accused's right to counsel, we cannot agree that a trial judge's discretion to replace appointed trial counsel over the objection of both counsel and defendant extends to a situation where the only justification for such replacement is the trial judge's personal "feelings" and "preferences."[4] See *Stearnes,* supra. There must be some principled reason, apparent from the record, to justify a trial judge's sua sponte replacement of appointed counsel under these circumstances. Because no such principled reason is evident in the instant case, we find that relator has satisfied the second prerequisite to mandamus relief.[5]

Based on the foregoing, we find that the facts of this case demonstrate that relator has established that (1) he has no adequate remedy at law, and (2) he has a clear right

to relief from respondent's erroneous replacement of Scardino and Kiernan. Consequently, we hold that relator is entitled to a writ of mandamus so long as the case remains in its present posture. However, as is customary with this Court, we will withhold issuance of the writ at this time. Instead we accord the respondent the opportunity to conform his actions to this opinion. Only if such action is not taken will the writ of mandamus issue.

---

wishes to withdraw and the client refuses to cooperate with the attorney, denial of the motion to withdraw is not error if the client is provided adequate representation); see also, Texas Rules of Disciplinary Conduct 1.15(c) (When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation).

**4.** According to the record, respondent's action in no way reflected a particularized belief that appointed counsel would be unable to adequately represent relator on appeal. Neither did the record reflect any evidence of a potential conflict of interest on the part of Kiernan or Scardino. Respondent's "practice," "experience," "feelings," and "preference" were the only explanations given.

**5.** In reaching this conclusion, we do not undertake to delineate the specific circumstances in which the principled reasons of a trial judge would justify the sua sponte removal of counsel over the objection of counsel and/or defendant. Nor do we imply that a trial judge is forbidden from allowing trial counsel to withdraw for good reason, in accordance with the well-settled jurisprudence of this State. See *Steward v. State,* 422 S.W.2d 733, 737 (Tex.Cr.App.1968) (holding that there "may be many valid reasons why appointed trial counsel may be allowed to withdraw and other counsel appointed on appeal.").