NO. 07-03-0383-CR


 07-03-0384-CR

 07-03-0385-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



SEPTEMBER 30, 2003



______________________________




DAVID MATTHEW LAYTON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;



NO. 34,435-C, 34,436-C, 34,437-C; HONORABLE PATRICK PIRTLE, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

ORDER


 We withdraw our prior order of abatement and remand, and enter this order in its
place. 

 Appellant David Matthew Layton appeals from three convictions and sentences in
the 251st District Court of Potter County, Texas (the trial court). 

 Appellant has, acting pro se, filed motions seeking his appointed appellate
counsel's withdrawal and leave to appear on appeal pro se. In the motions, appellant
alleges that he and his attorney cannot agree on the issues to be presented for appellate
review. Additionally, appellant has filed a copy of a letter directed to his counsel
containing demands that counsel withdraw, and threatening to file a grievance with the
State Bar of Texas against his attorney if the attorney does not withdraw. 

 Appellant does not have a right to file documents pro se while being represented
by counsel. See Landers v. State, 550 S.W.2d 272, 279-80 (Tex.Crim.App. 1977). Nor
does an indigent have the right to choose which counsel the court will appoint to represent
him or her. See Buntion v. Harmon, 827 S.W.2d 945, 949 (Tex.Crim.App. 1992); Malcom
v. State, 628 S.W.2d 790, 791 (Tex.Crim.App. 1982). Once the court has appointed an
attorney to represent an indigent, the attorney has the obligation to represent the
defendant until charges are dismissed, the defendant is acquitted, appeals are exhausted,
or the attorney is relieved of his duties by the court or is replaced by another attorney. See
Olvera v. State, 96 S.W.3d 316, 319 (Tex.App.-Amarillo 2000). If an indigent is displeased
with appointed counsel, he must bring the matter to the court's attention. Thereupon, the
defendant carries the burden of proving that he is entitled to a change of counsel. Id. The
Court of Criminal Appeals has historically affirmed the trial judge's decisions in refusing
defendants' motions to dismiss their court-appointed counsel. Id.

 Because of the seriousness of appellant's allegations and threats to counsel
appointed by the trial court, pursuant to Tex. R. App. P. 2 , these appeals are abated and
the causes are remanded to the trial court. Upon remand, the judge of the trial court is
directed to cause notice to be given of and to conduct a hearing to determine whether
appellant has made a knowing and voluntary decision to waive his right to counsel and to
represent himself on appeal. If the trial court determines that appellant has made a
knowing, voluntary decision to waive his right to counsel and to represent himself on
appeal, then the trial court should discharge appellate counsel from any further obligations
to appellant. If the trial court determines that appellant has not made a knowing, voluntary
decision to represent himself on appeal, then the trial court should enter orders and make
recommendations appropriate to continued prosecution of appellant's appeals based on
the evidence presented at the hearing, and on its findings and conclusions therefrom. 

 The trial court is directed to: (1) conduct any necessary hearings; (2) make and file
appropriate findings of fact, conclusions of law and recommendations, and cause them to
be included in a supplemental clerk's record; (3) enter any orders appropriate, based on
its findings and conclusions; (4) cause the hearing proceedings to be transcribed and
included in a reporter's record; and (5) have a record of the proceedings made to the
extent any of the proceedings are not included in the supplemental clerk's record or the
reporter's record. In the absence of a request for extension of time from the trial court, the
supplemental clerk's record, reporter's record, and any additional proceeding records,
including any orders, findings, conclusions and recommendations, are to be sent so as to
be received by the clerk of this court not later than November 14, 2003. 

 Per Curiam

Do not publish.



he adequacy of an expert report only if it appears to the
court, after hearing, that the report does not represent an objective good faith effort to
comply with the definition of an expert report. . . ." Section 74.351(r)(6) defines an expert
report as follows:

 (6) "Expert report" means a written report by an expert that provides a fair
summary of the expert's opinions as of the date of the report regarding
applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed.


Therefore, the issue we must decide is whether the expert report represents a good-faith
effort to comply with the statutory definition. Am. Transitional Care Centers of Tex. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001). The only information relevant to this inquiry is
that within the document's four corners. Id.

 To comply with the statute, the report must contain more than mere conclusions. 
Wells v. Ashmore, 202 S.W.3d 465, 467 (Tex.App.-Amarillo 2006, no pet.). To constitute
a "good-faith effort," the report must contain enough information to (1) inform the defendant
of the specific conduct the plaintiff has called into question and (2) provide a basis for the
trial court to conclude that the claims have merit. Palacios, 46 S.W.2d at 879; Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). The report need not marshal all the
plaintiff's proof, but the expert must do more than merely voice his opinions and conclusions
about the standard of care, breach, and causation. Bowie, 79 S.W.3d at 52.; Palacios, 46
S.W.3d at 878-79. We review the trial court's ruling for a clear abuse of discretion. See
Palacios, 46 S.W.3d at 878. A trial court abuses its discretion if it acts in an arbitrary or
unreasonable manner without reference to any guiding rules or principles. Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). There is no abuse,
however, simply because a trial court may decide a matter within its discretion differently
than an appellate court. Id. at 242.

 UMC does not dispute Dr. Coney's qualifications, his opinion on the applicable
standard of care, or his opinion regarding whether that standard was breached. Instead,
they contest his opinions with respect to causation. In that regard, we agree with the trial
court that the second supplemental report was sufficient to constitute a good-faith effort to
comply with the requirements of § 74.351. Dr. Coney states in the report that, while Carita
was under UMC's care, her fetal monitoring strip "revealed multiple non-reassuring fetal
heart rate patterns." He explains that these non-reassuring patterns are frequently
associated with cord problems and should have been recognized by the obstetrical nurses. 
He then lists seven specific measures that could have been taken to correct the problem
and states that, despite the recognizable symptoms, the nurses failed to take any measures
and allowed Carita to be discharged. In addition to citing several failures by UMC's nurses
that he contends were causative of Dylan's death, Dr. Coney opines that if the nurses had
timely recognized the symptoms associated with cord compression and taken the stated
measures, there is a high likelihood that the fetus would have been delivered by Cesarean
section "alive and intact."

 Nonetheless, UMC insists that the expert report fails to explain how the nurses could
have prevented Carita from being discharged or how they would have invoked the hospital's
chain of command. Similarly, UMC claims the report fails to establish whether the
measures proposed by Dr. Coney actually would have resulted in Carita being retained for
observation or a successful delivery. Section 74.351, however, only requires that expert
reports provide a "fair summary" of an expert's opinions on each of the identified elements.
The report need not present evidence as if the plaintiff was actually litigating the case on
the merits. Hardy v. Marsh, 170 S.W.3d 865, 868 (Tex.App.-Texarkana 2005, no pet.). 
See also Bowie, 79 S.W.3d at 52-53; Palacios, 46 S.W.3d at 878. Because the Wards'
second supplemental expert report adequately states Dr. Coney's opinions with respect to
causation, we find the trial court reasonably exercised its discretion when it overruled UMC's
objections. UMC's issue is overruled.

 Accordingly, we affirm the trial court's order.


 Patrick A. Pirtle

 Justice


 
1. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2006).
2. See § 74.351(a). 
3. See § 74.351(c).
4. Although they filed objections to the report, UMC did not move to dismiss the
Wards' claims. By their brief, UMC admits that such a motion would have been
inappropriate given that the deadline for filing expert reports had not yet passed.