

IN THE
TENTH COURT OF APPEALS

No. 10-13-00127-CR

PERRY LEE RAY FORD,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 40th District Court
Ellis County, Texas
Trial Court No. 37051CR

MEMORANDUM  OPINION

Appellant Perry Lee Ray Ford was charged by indictment with the offense of aggravated robbery. The indictment further alleged a prior felony conviction for robbery by threat. The jury found Ford guilty and assessed a life sentence. Raising four issues, Ford appeals.

In his first issue, Ford asserts that the trial court deprived him of representation during his trial. In filling out his indigence affidavit for appointed counsel, Ford stated that Jim Jenkins had previously been his court-appointed attorney and that he preferred

having Mr. Jenkins appointed to represent him. Mr. Jenkins was thus appointed to represent Ford in May 2012.

Approximately two weeks before the March 18, 2013 trial setting, Ford sent a letter to the district clerk stating that Mr. Jenkins was no longer his attorney because of an alleged conflict of interest and that Ford had hired an attorney. Mr. Jenkins filed a motion to withdraw a week before trial, and it asserted that Ford had hired an attorney but was not aware of the attorney's name.

In a hearing on the motion, Ford said that the conflict was that he had been informed that he would be found guilty and given a life sentence. Ford at first said that he had hired an attorney (one he had hired before) but refused to reveal the attorney's name because he had been under jail discipline and could not use the phone. Under cross-examination, Ford said that he had not actually hired the attorney because he lost phone privileges. He evaded answering the State's question on whether he had talked to his brother about getting a new attorney so he could delay going to trial.

The trial court denied the motion to withdraw, and Ford informed the trial court that he did not want to be present at or participate in the trial because he was not being allowed to have his chosen attorney. Mr. Jenkins, Ford's appointed counsel, asked for a continuance for that reason. The trial court told Ford that he could bring any attorney to trial but that no continuance would be granted. The trial court also denied Ford's request to be tried in absentia. In response, Ford said that he did not want to be there and threatened to "make a scene" in front of the jury.

When Ford next appeared in the courtroom, he had ripped open his shirt. The

trial court recessed for the shirt to be repaired or replaced and told Ford that if he did it again, he would sit in front of the jury that way. Ford then threatened to urinate and defecate on himself. Thereafter, a detention officer testified that Ford was refusing to put on a new shirt and that he had also ripped open his pants. Ford came into the courtroom shirtless and with the torn shirt covering the rip in his pants that otherwise exposed his genitals. Ford again asked for the lawyer that he allegedly had hired, and in response to the trial court's statement that Ford could have that alleged attorney but could not have a continuance, Ford said that he needed "time."

The trial court then decided that, given Ford's previous statement that he did not want to be present and his appointed counsel's agreement with Ford's desire, Ford would be tried in absentia. Jury selection then began without Ford's presence, and a jury was chosen without objection.

Before trial began the next day, Ford was present in the courtroom and the trial court advised that he would not be tried in absentia. To supplement the record, the State offered into evidence a recorded phone call between Ford and his brother pertaining to Ford's plan of hiring a new attorney solely to be able to put off the trial. It appears that Ford had a pending case in another county and that Ford was expecting a plea bargain in that case in which he thought he could also resolve the Ellis County case.

The trial court then reiterated that it had denied the motion to withdraw because that would have resulted in a continuance but that Ford was still able to have any attorney present for him at trial. Also, the trial court stated that no attorney had

contacted the court on Ford's behalf.  Finally, the trial court found that Ford's attempts to discharge Mr. Jenkins, to hire a new attorney, and to disrupt the trial were all done to intentionally delay the trial.  Ford then complained that he had not been allowed to use the phone to contact his family or his alleged new attorney and that he had been "tased" when the deputies had tried to dress him in civilian clothes for trial.

Trial then commenced, and when the third witness was called to the stand, Ford complained that he did not want to be at the trial.  After another outburst by Ford in front of the jury, the trial court stated that Ford would observe the trial by closed-circuit monitor with regular breaks so that Ford and his appointed attorney could communicate.  The trial court also instructed the deputies to allow Ford to have phone access to contact his alleged new attorney or family.  After discussion about how Ford was trying to manipulate a continuance, Ford's appointed attorney stated that Ford's brother had called him twice before trial, first telling him that he was off the case and they were hiring an attorney, and second, telling him that they were not going to hire the attorney.

Ford observed the rest of the trial that day by closed-circuit monitor.  Thereafter, he was in the courtroom for the rest of the trial without apparent incident.

In his first issue, Ford argues that, because he did not want his appointed attorney, he was not allowed his choice of counsel and that, alternatively, he was effectively left to represent himself without proper admonishment.

> Even though a criminal defendant is entitled to effective assistance of counsel, this constitutional protection cannot be used to obstruct the orderly procedure in the courts or to interfere with the fair administration

of justice. [*Dunn v. State*, 819 S.W.2d 510, 520 (Tex. Crim. App. 1991)]. A criminal defendant may not wait until the day of trial to demand different counsel or to request that counsel be dismissed so the defendant may retain other counsel. *Robles v. State*, 577 S.W.2d 699, 704 (Tex. Crim. App. 1979); *Webb v. State*, 533 S.W.2d 780 (Tex. Crim. App. 1976).

An indigent defendant has received the protections provided under the Sixth Amendment when a trial court appoints an attorney to represent him. *Malcom v. State,* 628 S.W.2d 790, 791 (Tex. Crim. App. 1982); *Reddic v. State*, 976 S.W.2d 281, 283 (Tex. App.—Corpus Christi 1998, pet. denied). The defendant must accept the attorney or attorneys appointed by the court unless the defendant can show adequate cause for appointment of another attorney. *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977); *Reddic*, 976 S.W.2d at 283. If a defendant is dissatisfied with the appointed counsel the defendant must bring the matter to the attention of the court; thus, it is the burden of the defendant to prove entitlement to different counsel. *Malcom,* 628 S.W.2d at 791; *Reddic*, 976 S.W.2d at 283. But "[o]nce the attorney-client relationship has been established any potential disruption of the relationship is subject to careful scrutiny. Thus, neither the attorney nor the client may sever the attorney-client relationship without justifying the severance to the trial court." *Reddic*, 976 S.W.2d at 282 (citing *Buntion v. Harmon*, 827 S.W.2d 945, 948 n.3 (Tex. Crim. App. 1992) (orig. proceeding)).

*Long v. State,* 137 S.W.3d 726, 735 (Tex. App.—Waco 2004, pet. ref'd).

"A request for a change in counsel cannot be made so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice." *Burgess v. State,* 816 S.W.2d 424, 428 (Tex. Crim. App. 1991).

There are three options available to the trial court when a defendant requests a change of counsel at the last minute before trial.

First, at its discretion the court can appoint, or allow the accused to retain, new counsel. Second, should the trial court deny new counsel, and the accused unequivocally assert his right to self-representation under *Faretta* [*v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)], persisting in that assertion after proper admonishment, the court must allow the accused to represent himself. Third, unless the trial court allows new counsel, it must compel an accused who will not waive counsel and does not assert

his right to self-representation to proceed with the lawyer he has, whether he wants to or not.

*Long,* 137 S.W.3d at 735 (citing and quoting *Burgess,* 816 S.W.2d at 428-29).

Ford did not want or seek to represent himself, and because the trial court denied the motion to withdraw and Ford's appointed counsel represented Ford at trial, the trial court plainly chose the third option. In so doing, and with record support of the finding that Ford was attempting to manipulate a continuance of the trial setting, the trial court did not err or abuse its discretion. We overrule issue one.

In his second issue, Ford contends that the trial court erred in removing him from the courtroom during jury selection in a manner inconsistent with the Sixth and Fourteenth Amendments, article 1, section 10 of the Texas Constitution, and Code of Criminal Procedure article 33.03. The State responds that Ford invited the alleged error by his repeated statements that he did not want to be present at the trial. *Gore v. State,* 332 S.W.3d 669 (Tex. App.—Eastland 2010, no pet), is instructive on this issue.

> The Sixth Amendment's right of confrontation requires a defendant threatened with the loss of liberty to be physically present at all phases of the criminal proceedings against him absent a waiver of that right through the defendant's own conduct. *Illinois v. Allen,* 397 U.S. 337, 338, 343-44, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). For example, a defendant may waive the right to be present through his disruptive conduct during proceedings. *Id.* at 346, 90 S.Ct. 1057. A defendant also waives this right if he voluntarily absents himself from proceedings after trial has commenced in his presence. *Taylor v. U.S.,* 414 U.S. 17, 18, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973).

> Article 33.03 requires a defendant in a felony prosecution to be personally present at trial. A defendant's right to be present is unwaivable until after the jury has been selected. *Miller v. State,* 692 S.W.2d 88, 91 (Tex. Crim. App.1985). After jury selection, the trial court can continue a trial to conclusion if the defendant voluntarily absents himself. Article 33.03.

Immediately before voir dire began, Gore requested the trial court to excuse him from being present at trial. Gore's trial counsel reported that he had advised his client about the importance of a defendant's presence but that Gore preferred to stay in jail rather than attend. Gore stated that he had been through the process before and did not see how his presence would help. The trial court reiterated to Gore the importance of being present at trial and informed him that it would be in his best interest to attend. Gore repeated his request to return to jail. Gore's trial counsel expressed his fear that forcing Gore to attend trial might lead his client to act out and disrupt the proceedings. Throughout this discussion, the State pointed out that Article 33.03 prohibited the trial court from granting Gore's request. Gore's trial counsel countered that a defendant could waive this requirement. The trial court granted Gore's request, and the trial continued in his absence.

Even assuming that the trial court erred by selecting a jury in Gore's absence, a defendant may not invite error, whether statutory or constitutional, and then submit that error as a basis for appellate relief. See Garcia v. State, 919 S.W.2d 370, 393-94 (Tex. Crim. App. 1996); *see also Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (distinguishing the doctrines of invited error and waiver). *Garcia* was a death penalty case. The trial court notified defense counsel that it was qualifying ten prospective jurors. Counsel advised the trial court that he could not be present, and both Garcia and his counsel stated on the record that they had no objection to the proceedings occurring without their presence. *Garcia*, 919 S.W.2d at 393. But on appeal, Garcia maintained that the trial court deprived him of his right to be present under Article 33.03. *Id.* The Court of Criminal Appeals found that Garcia was not denied this right— he waived it. *Id.* at 394. Furthermore, because Garcia created the error, he could not raise it as a basis for reversal. *Id.* at 393.

Gore created any error that the trial court may have committed by granting his request to conduct the trial in his absence. He may not now use this error to secure a reversal.

*Gore*, 332 S.W.3d at 671-72.

Likewise, we find that Ford created any error that the trial court may have committed by granting Ford's request that he not be present during jury selection. *See id.; see also Garcia*, 919 S.W.2d at 393. Issue two is overruled.

Ford's third issue asserts that the trial court erred in allowing Ford to be "tortured," in violation of the Eighth Amendment's prohibition of cruel and unusual punishment and the United Nations Convention Against Torture. This issue pertains to Ford being "tased" and not receiving any medical care afterwards. Ford was tased after the trial court instructed deputies to "use all reasonable measures, including any form of restraint," to dress Ford in civilian shirts and pants.

On appeal, Ford contends that he was subjected to excessive force (being tased) while being changed from jail attire to civilian attire and that it was his choice to appear in court in jail attire. Nothing in the record supports the contention that Ford wanted to appear before the jury in jail attire, and Ford did not develop a record on the circumstances of his being tased while his clothes were being changed or that he may have needed medical care. The trial court was in the position to determine whether Ford was continuing to attempt to disrupt or delay the trial. We agree with the State that the record does not support Ford's contention that he was "tortured." We overrule issue three.

In issue four, Ford contends that the trial court erred in assessing appointed counsel's attorney's fees as part of the court costs because Ford was indigent. The judgment assessed court costs in the amount of $5,588.88, but it does not reflect what amount of that consists of attorney's fees. In a supplemental clerk's record that we requested, the bill of costs reflects attorney's fees in the amount of $5,314.88.

As noted above, Ford had appointed counsel in the trial court because of his indigence, and he has appointed counsel in this appeal. The State concedes that the trial

court did not make a finding that Ford had the ability to pay the cost of his court-appointed attorney at trial.

Because Ford was indigent and is presumed to remain indigent absent record proof of a material change in his circumstances, the judgment incorrectly assessed $5,314.88 in court-appointed attorney's fees as court costs. *See* TEX. CODE CRIM. PROC. ANN. arts. 26.04(p), 26.05(g) (West Supp. 2013); *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010); *Watkins v. State*, 333 S.W.3d 771, 781-82 (Tex. App.—Waco 2010, pet. ref'd). Issue four is sustained, and we modify the judgment's court costs by deleting $5,314.88 from the assessed court costs of $5,588.88 for a corrected court costs amount of $274.00.

We affirm the trial court's judgment as modified.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed as modified
Opinion delivered and filed June 26, 2014
Do not publish
[CRPM]