

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

§

IN RE:                                                                          No. 08-19-00183-CR

§

THE STATE OF TEXAS,                                        AN ORIGINAL PROCEEDING

§

Relator.                                                                      IN MANDAMUS

§

§

**O P I N I O N**

This mandamus action in a family violence assault case is brought by the State to challenge

two related orders by the trial court pertaining to pretrial discovery.  In effect, the orders ratified a

subpoena duces tecum requested by defense counsel which had been  improperly issued and served

upon the complaining witness of this case.  The subpoena compelled the witness to turn over her

cell phone to defense counsel at a set time and place to permit an investigator employed by the

defense to not only inspect the phone's content but to perform a so-called "dump" of particular

data allegedly stored on the phone which the defense claimed would likely be deleted by the

witness if not otherwise preserved.  By its petition for writ of mandamus, the State contends that

the trial court exceeded its statutory, constitutional, or inherent authority by issuing the two orders

at issue.  In turn, real party in interest Kevin Quezada and the Texas Criminal Defense Lawyers

Association (TCDLA), as amicus curiae, assert that the trial court's ratification of the subpoena duces tecum was proper, and in any event, the State lacks standing to bring this mandamus petition.

After resolving the standing question in favor of the State, we conditionally grant relief.

## BACKGROUND

### *Defendant Issues Purported Subpoena to Complaining Witness*

Quezada has been charged with family-violence assault with one or more prior family violence convictions. The charge pending is a felony level offense. The complaining witness in this case, Blanca Navarro, previously obtained a lifetime protective order against Quezada. The record indicates that Quezada also faces a separate charge of sexual assault in another case, with Navarro being the complaining witness in that case as well.

On July 2, 2019, Quezada's counsel served Navarro with a subpoena duces tecum that commanded her to appear before the 243rd District Court of El Paso County, Texas on July 3, 2019 at 10:30 a.m. and to "testify as Witness and/or produce the requested records on that date and time, in [sic] behalf of the Defendant in a criminal action pending in said Court, wherein The State of Texas is Plaintiff and Kevin Quezada, is Defendant[.]" The subpoena further stated:

> Please appear and provide any and all cell phones which you have used from February 2019 through May 2019, this includes any cell phones which you may not personally use, but are included under your cell phone service contract(s). This subpoena specifically includes, but is not limited to, any cell phone which was used in connection with [a specific cell phone number].

It is undisputed that prior to issuing the subpoena, Quezada did not make a written application to the clerk that was also made available to the State as required by TEX.CODE CRIM.PROC.ANN. art. 24.03 (governing applications for subpoenas issued in felony cases).

The details of what exactly happened next are unclear. However, it is not disputed that on July 3, 2019, at approximately 10:30 a.m., Navarro responded to the subpoena by appearing at the

2

door of the 243rd District Court where she met with two of Quezada's attorneys with the El Paso County Public Defender's Office, as well as one of their investigators, and shortly thereafter surrendered her phone and provided the passcode. The State characterizes the taking of the cell phone as a "confiscation;" Quezada contends that the complainant voluntarily gave her cell phone and passcode to members of the Public Defender's Office.[1]

Upon learning about the existence of the subpoena, attorneys for the State protested, and an impromptu hearing before the Honorable Selena Solis, Judge of the 243rd District Court and the Respondent in this mandamus action, ensued that same day. It is unclear whether the hearing was requested by the defense or by the State. However, it is undisputed that at the time Quezada's attorneys took possession of the complaining witness's cell phone under color of the subpoena, no hearing had been scheduled in the 243rd District Court.

### Open Court Hearing on Subpoena

At the open court hearing, the trial court asked for announcement of counsel and stated that "[w]e're here for a status hearing and miscellaneous issues."  The State orally moved to quash the subpoena early in the hearing,[2] and the parties gave the following explanation of the situation that occurred:

| | |
|---|---|
| THE COURT: | Thank you. What's going on? |
| [THE STATE]: | Judge-- |
| [DEFENSE COUNSEL #2]: | We subpoenaed her phone. We subpoenaed the complaining witness's phone, and she gave us the phone. We want to do a dump on the phone, get it right back to her as soon as possible. Hopefully that |

---

[1] In the appendix to its mandamus petition, the State has attached the complaining affidavit in this case. In it, Navarro alleged that during an argument, Quezada grabbed Navarro's cell phone and searched it while accusing her of cheating on him. She further alleged that Quezada physically assaulted her in various ways during the argument, including when she attempted to get the cell phone back from him.  The pending assault charge against Quezada is based on the allegations Navarro made against Quezada regarding the altercation over control of her cell phone.

[2] On July 8, 2019, the State filed a written motion to quash the subpoena and motion for protective order.

3

will take two to three weeks. Right? She came. She handed over the phone.

THE COURT: Who does your phone dump in your office?

[DEFENSE COUNSEL #2]: We have an expert, so we have to send it off to him. I'm not sure the expert's name. But that's what we were planning on doing.

THE COURT: Okay.

[DEFENSE COUNSEL #2]: She handed over the phone this morning outside. And then I think the district attorney's office has a problem with the subpoena.

THE COURT: Okay.

[DEFENSE COUNSEL #2]: That's why they wanted to come talk to you.

THE COURT: What's the problem with the subpoena?

[THE STATE]: I have a number of problems with this, Judge.

THE COURT: All right. Number one?

[THE STATE]: Because first of all, we weren't set for anything for today until the defense went and requested a status hearing setting so that they could issue the subpoena for this phone, which is an abuse of the subpoena power. Article 24.01 says that you're only allowed to subpoena witnesses to hearings at which you anticipate taking their testimony for some reason. There was no such hearing for today.

THE COURT: I thought it was a subpoena duces tecum.

[THE STATE]: Well, it still applies to a subpoena duces tecum, which -- it still has to be for some kind of hearing at which that evidence would be presented, which was not set for today. So they requested this setting to have a setting on the books so they could issue a subpoena to make someone come produce their phone to them without ever anticipating putting that person on or using that phone information at any kind of hearing that was scheduled for today. So the subpoena -- this is an abuse of the subpoena power

4

by the defense. And I would ask the Court to quash this subpoena and have them return the phone on that basis . . . .

Following the opening dialogue, the State argued to the court that there was no general right to discovery in Texas, and further contended that the subpoena amounted to a "fishing expedition," for which the defense had not made required showings of materiality or favorableness. Defense counsel countered by stating "that phone is the evidence that we needed for this hearing," which it urged had rendered the subpoena duces tecum proper. Defense counsel also argued that a search of the phone would show there were communications made between the complaining witness and the defendant, which would be material because "this is a sexual assault case, and one of the elements would be consent. So any sort of conversations between them is very material to the case."[3] When the trial court asked why that information had not been included in the subpoena, defense counsel responded that Article 24.02 of the Texas Code of Criminal Procedure did not require those details, explaining: "I don't think that we do need to put that in the subpoena. This is not like applying for a warrant, right, where, you know, you need to show the specific material things in trying to get the judge to allow you to have a warrant. This is discovery." Defense counsel also referenced Rule 205 of the Texas Rules of Civil Procedure and argued that the subpoena was specific enough to comply with the requirements of that rule, as well. Defense counsel also challenged the State's standing to quash the subpoena because the State was not a party to the subpoena. Quezada's second defense counsel added that the complaining witness "had already turned it [the phone] over to us" and that she did not "understand why the State has a problem on getting our hands on evidence . . . for our case."

---

[3] This subpoena was served and these proceedings took place in the assault-family violence case pending against Quezada. Quezada has a separate sexual assault charge pending in a separate case with the same complaining witness.

5

The trial judge voiced her displeasure with the proceedings, and the following colloquy ensued:

THE COURT: Well, I don't -- okay. Let's just -- with all due respect to both sides, I don't understand why the phone wasn't picked out or -- email and say, hey, we want this, this is why we want it, do you have a problem with it. And if they had a problem with it, then you do all this stuff. I'm not -- I'm not into, like, all the secrecy. I'm not into all this -- you know, why everything has to be a fight. You know, it's like you're going to get -- if it's favorable to you and your client is telling you this is what you're going to find on that phone, you tell them that.

[DEFENSE COUNSEL #1]: Judge, the thing is --

THE COURT: I know they don't have it. But you just said "this is what I'm going to be getting." And they could have gotten it for you. Right? They don't represent the complaining witness. But they do, you know, say, okay, this is what they're looking for. I mean, I don't know. Maybe I'm too naive.

[DEFENSE COUNSEL #1]: If I may respond real quick? I do have pretty often communications with Ms. Moore and with the State. This was not about secrecy. The reason why that didn't happen is because the State is not a party to the subpoena. So I didn't have a reason to tell them -- do you have a problem with this or not, because this goes directly to the complaining witness. If she had a problem with giving the phone, then we could have addressed the Court.

THE COURT: Did you advise her that she could have an attorney?

[DEFENSE COUNSEL #1]: No, because she just --

THE COURT: Did you advise her that she could have not -- that she didn't have to give this to you?

[DEFENSE COUNSEL #1]: No, Judge. Because our only duty is to ask for the evidence. If they hand it over, then we take it. If they don't, then that's when --

6

| | |
|---|---|
| [THE STATE]: | No, no. |
| [DEFENSE COUNSEL #1]: | -- we would have come to the Court to ask for a hearing and give her an ad litem or something. |
| THE COURT: | I know. But on the subpoena, you're saying if she doesn't follow the subpoena, then she can be subject to attachment. |
| [DEFENSE COUNSEL #1]: | At that point, the Court can appoint -- |
| [DEFENSE COUNSEL #2]: | Or do a show cause hearing where -- and, Your Honor, if I can make one more point with regard to why this had to be a rather quick thing? |
| THE COURT: | Yeah. Because we're not even scheduled for anything. It's just a status hearing. What's the urgency? |
| [DEFENSE COUNSEL #2]: | So we need to serve here, right, and have her bring it over here and have a minimum amount of time to let the Court know -- when we first saw her in the hall and we said, "This is the subpoena," she said "Well, can I delete some things first?" That's one of the things that we're worried about. Because if you say, okay, well, have the State go take care of that, the State can say, okay, well, come bring it to us within a week, right, make sure everything's -- at that time, anything -- all of the communications that we're looking for could be deleted. |

At that point in the hearing, the trial court questioned the State further about its standing to challenge the subpoena, noting that "you don't represent the complaining witness." State's counsel agreed but argued that the State had standing to participate in the subpoena hearing because it was a party to the proceedings.

The trial court then asked where the phone was located. Defense counsel stated that the Public Defender's Office investigator had possession of the phone. The trial court stated that it did not want items to be deleted, and it contemplated issuing an instruction to the complaining witness on that score, but offered instead an in chamber review of its contents. Defense counsel stated that

7

she would prefer the trial court review the phone in chambers rather than issuing an instruction because "[i]t's a lot of trust on the complaining witness," to which the trial court responded, "I know. But she has no phone." Quezada's attorneys then disclosed that they believed from a span of February 2019 to May 19, 2019, the complaining witness had communications with their client that "could be exculpatory to some extent":

| THE COURT: | This is from January 27th of 2019 is the date upon which the offense was alleged to have taken place; is that correct? |
|---|---|
| [DEFENSE COUNSEL #1]: | Yes, Judge. We're not looking for any other thing that's not related to this. We're not looking into her pictures or whatever. We're just looking for the text message content between her and the client. |
| [DEFENSE COUNSEL #2]: | Unless there are pictures between her -- in the text messages. But we're looking for communication, Judge. That's what we're looking for. |

. . .

| [DEFENSE COUNSEL #1]: | This is like any other subpoena duces tecum. This is like any other subpoena duces tecum. If it's documents, you get documents, and you look for what you need. It's not different just because it's a cell phone. |
|---|---|
| [DEFENSE COUNSEL #2]: | This is not something that we can go through cell phone records. |
| THE COURT: | Well, it's different because it's not the -- it's not a party. That's why it's different. So there is a little bit more, like -- you know, I don't want to say expectation of privacy. But that's why it's not -- so when you're in a civil litigation, you know, and it's not the defendant that you're wanting to get the discovery and you're willing to go to a third party, I mean, you got to -- you know, you've got to compel the defendant to get that information to you. . . . I mean, have you guys had a chance to look at this cell phone? |

8

| | |
|---|---|
| [THE STATE]: | We have an understanding of what's going to be found on there. And it's not going to be favorable to them. They're not going to be able to meet the favorable showing that they have to meet. |
| | . . . |
| THE COURT: | Can you narrow it and get more specific? I don't want this to be a finishing expedition. |
| [DEFENSE COUNSEL #2]: | Your Honor, it doesn't need to be a fishing expedition if the Court is going through. We're telling you where we're looking. We're telling you what we're looking for. |
| THE COURT: | And you haven't yet. |
| [THE STATE]: | They need -- |
| [DEFENSE COUNSEL #2]: | We're looking for the messages -- |
| [DEFENSE COUNSEL #1]: | Messages and pictures -- text messages and pictures between her and the complaining witness. |
| [DEFENSE COUNSEL #2]: | He wants us to tell you the evidence before we have a chance to look for it. |
| [THE STATE]: | Because that's what's required. |
| [DEFENSE COUNSEL #2]: | Which is not the burden that's involved in this case. |
| [THE STATE]: | That is the burden. |
| | . . . |
| [DEFENSE COUNSEL #2]: | We have -- we have complied with the elements and notice here. This is clearly material to the case. Right? And material isn't just that the defendant would win the case or that it would change the verdict of the case. No, no. This is discovery. This is even larger than relevance. Right? So anything that goes on to their relationship -- because their relationship is what's going to be at issue in this case. So we need to -- we need to be able to go in there and get the communications between the complaining witness and the defendant. That's what we're asking |

9

for.

> It can be narrowly tailored.  Right?  The way to do this is often with a phone dump.  Right?  But it can be narrowly tailored in the Court's -- or if the Court wanted to look through any messages and turn them over to us, only the messages between her and the client -- her and the defendant in this case.  That's a narrowly tailored solution to solve any --

[DEFENSE COUNSEL #1]:  I don't know how much more specific we can get without telling the State our evidence.

The trial court then questioned the State regarding the rules of decision, and the State replied that the defense could not compel evidence from a witness unless the defense "ma[d]e a showing of materiality and favorableness such that it could exculpate their client." The State also noted that the sexual assault case was a separate case from the pending assault-family violence case in which the subpoena had been served.

After the hearing resumed following a recess, defense counsel explained that the complaining witness had contacted not only the defendant, but the defendant's girlfriend and the defendant's mother.  The trial court then inquired further, and defense counsel admitted on the record that the defense had not anticipated that a hearing would occur in connection with the subpoena at issue:

[DEFENSE COUNSEL #1]:  It's not just my client. It's also my client's girlfriend and my client's mom who can attest to this.

THE COURT:  How do they -- wait.

[DEFENSE COUNSEL #1]:  Because she's also contacted them.

THE COURT:  Okay. So then why aren't they here? I mean --

[DEFENSE COUNSEL #1]:  Because this was not supposed to be a hearing, Judge. It was just to get her phone.

The defense attorneys also admitted that they were attempting to subpoena the phone in

10

the assault-family violence case in an attempt to uncover evidence that could be relevant to the separate sexual assault case, but maintained that evidence that would be found on the complaining witness's phone would be relevant to both the pending assault-family violence case and the sexual assault case.

It is unclear whether the complaining witness was present in the courtroom for this hearing, but the record indicates she did not speak at any time, nor was she ever questioned by the trial court.

### *Ex parte Hearing in Chambers*

The trial court in chambers conducted a short ex parte,[4] in camera hearing with Quezada's attorneys at which neither the State nor the complaining witness were present. At the end of the hearing, which was transcribed, the trial court ordered the transcript of the hearing to be placed under seal. The sealed copy of this transcript is on file with this Court. The State has not challenged the trial court's order sealing the transcript of the ex parte, in camera proceeding nor asked for the transcript to be unsealed as part of this mandamus action. As such, we will not reference the contents of this hearing in our opinion.

### *The Trial Court's Orders*

On July 8, 2019, the trial court issued the following order, titled Order on Defendant's Subpoena Duces Tecum, which we reproduce verbatim save for several redactions:

> After careful consideration of the arguments of counsel concerning Defendant's issuance of a subpoena *duces tecum* of the complaining witness's cell phone related to communications between her and defendant, as well as her and defendant's mother and defendant's girlfriend, and an ex-parte *in camera* [FN] review of five (5) areas of communications between the complaining witness and the defendant, the Court is of the opinion that Defendant's subpoena should be GRANTED.

---

[4] Quezada maintains that the ex parte procedure was proper because this case is analogous to *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985), which allows the defense to make motions for expert witness appointments ex parte. We need not address the propriety of the ex parte procedure because the State has ultimately chosen not to directly challenge that facet of these proceedings.

11

[FN] The *in camera* review was conducted ex parte so that the defense could make an initial showing to the Court that the specific communications it sought to be part of its phone dump was material and favorable to the defense, warranting the subpoena. This could not have been done in the presence of the State without telling the State its evidence.

Per the State's request at the hearing on defendant's issuance of subpoena, the Court's ex parte *in camera* review on July 8, 2019 of the complaining witness's cell phone was conducted on the record and it will be sealed until after the case is over. Prior to the *in camera* review, defense counsel provided the court with a narrowly tailored list of specific phone apps and provided a summary as well as print outs of specific communications between the complaining witness and defendant, in support of what it expected to find on the apps.

The Court reviewed the following cell phone apps used to communicate to the defendant, the defendant's girlfriend, and the defendant's mother by the complaining witness during the time frame February 2019 through May 2019: 1) WhatsApp under defendant's user name "Kevin Quezada;" 2) Instagram under defendant's name [REDACTED]; 3) Facebook Messenger under defendant's user name [REDACTED]; 4) Text Now App and Text messages from complaining witness to the following cell phone numbers belong[ing] to defendant, his girlfriend, and his mother: [SEVEN PHONE NUMBERS REDACTED].

The Court FINDS that defendant has shown the communications between the complaining witness and defendant sought by defendant are both material and favorable to the defense and not considered a fishing expedition as the State itself believes and therefore would have the Court believe as well.

Furthermore, the Court FINDS that after a narrowly tailored *in camera* review of the complaining witness's cell phone, certain cell phone apps no longer appear which leads this Court to believe that the evidence (based on review of print outs of material cell phone communications) have been deleted or mysteriously disappeared from the complaining witness's cell phone.

IT IS HEREBY ORDERED that the defendant is permitted to conduct a limited phone dump of the complaining witness's cell phone. IT IS ORDERED that the phone dump be conducted in the most expeditious manner, as this Court is cognizant that the complaining witness is being deprived of her cell phone. For this reason, the phone dump shall be completed by close of business on July 18, 2019.

Furthermore, IT IS ORDERED that the phone dump is not to be construed as a fishing expedition and therefore it is to be limited to the following communications which were the areas reviewed in camera: WhatsApp under defendant's user name "Kevin Quezada;" 2) Instagram under defendant's name . . . 3) Facebook Messenger under defendant's user name . . . 4) Text Now App and Text messages

from complaining witness to the following cell phone numbers: [SEVEN PHONE NUMBERS REDACTED].

The next day—July 9—the trial court issued a second order denying the State's motion to quash the subpoena and motion for protective order. That order reads as follows.

After careful consideration of the State's argument(s) set forth in its Motion to Quash Subpoena Duces Tecum and Motion for Protective Order, the Court finds and orders the following:

1. The State's Motion to Quash Subpoena Duces Tecum is DENIED as moot. Additionally, this is not a discovery request of evidence in the State's possession nor is the complaining witness an agent of the State. Therefore, the Court FINDS that the State does not have standing [FN1] to file a motion to quash a subpoena of a witness that is not an agent of the State.

2. The State's Request for Protective Order is DENIED as inapplicable as presented in its Motion at paragraphs 47 and 48, page 14 of 16. The Court FINDS that these two paragraphs raise issues that have no bearing in this case. Therefore, the Court can only surmise that these paragraphs were cut and pasted from an unrelated proceeding for they bear upon issues that are inapplicable in the instant case. Furthermore, the State's requested relief as iterated in paragraph 2, page 14 of 16, likewise have no bearing in the instant case and therefore is DENIED as inapplicable.

[FN1] During the hearing on Defendant's issuance of subpoena held on July 3, 2019, the Court asked the State for case law on the legal relationship between the State and a complaining witness as guidance on determining whether the State had standing to file a motion to quash defendant's subpoena. None was provided. Subsequently, in its written Motion to Quash Subpoena Duces Tecum, the State provided two cases at page 5 of 16 of its Motion. The first case is a cite to the Federal Rules of Decisions. In this case, the discovery requested was deemed akin to attorney-client and work product. This is not the type of discovery sought by defendant in the instant case. There is no attorney-client privilege vis-à-vis the State and complaining witness. As such, this case is inapposite. The second cite is a state case, however, there is no analysis on the standing issue raised by this Court. Therefore, it too, is not dispositive on the issue of whether the State has standing to represent the complaining witness in this matter.

This mandamus action from the State followed.[5]

_____

[5] The status of the complaining witness's cell phone at the present time is not completely clear from the record. On July 10, 2019, this Court issued an order staying trial court proceedings and ordering the Public Defender's Office to return the complainant's phone into the custody of the trial court pending resolution of the mandamus proceeding or

**DISCUSSION**

The State asserts that the trial court lacked any statutory, constitutional, or inherent authority to order the complaining witness to provide Quezada with her cell phone so that an expert from the Public Defender's Office could conduct a "phone dump" and gather information that could be used both in the pending case and in a related sexual assault case. Under these circumstances, we agree. The State has negated all possible bases for the trial court's order on this record, meaning that mandamus relief is warranted.

### *Standard of Review*

To be entitled to mandamus relief, the relator must make: (1) a showing that relator has no adequate remedy at law; and (2) a showing that what relator seeks to compel is a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013). The ministerial act requirement is satisfied if the relator can show a clear right to the relief sought. *Id.* A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Id.*

The State has only a limited right of appeal. *See* TEX.CODE CRIM.PROC.ANN. art. 44.01. Its right to appeal does not include the type of order entered by the court during the trial of this case. Therefore, mandamus relief is appropriate if the State establishes it has a clear right to the relief sought.

### *I.*

### *The State's Standing to Challenge the Discovery Order*

---

further order of this Court. On August 1, 2019, this Court on the State's motion modified its previous stay order to permit the complainant to disconnect service to the cell phone in possession of the trial court "so that she may obtain cellular service on another cell phone[.]" We presume that the complainant's cell phone remains in the custody of the trial court at this time.

Quezada has challenged the State's standing to bring a motion to quash the discovery order directed at a third party—here, the complaining witness. Because standing is jurisdictional, we address this issue first.

To be entitled to mandamus, a relator must have a justiciable interest in the underlying controversy. *Terrazas v. Ramirez*, 829 S.W.2d 712, 723 (Tex. 1991)(orig. proceeding). The State points to Article I, Section 30 of the Texas Constitution as authority to challenge the subpoena on the complaining witness's behalf to vindicate her rights to fair treatment, dignity, and privacy under the crime victim's bill of rights. That portion of the constitution states, in relevant part:

§ 30. Rights of crime victims

Sec. 30 (a) A crime victim has the following rights:

> (1) the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process; and

> (2) the right to be reasonably protected from the accused throughout the criminal justice process.

> . . .

> (d) *The state, through its prosecuting attorney, has the right to enforce the rights of crime victims*.

> (e) . . . A victim or guardian or legal representative of a victim has standing to enforce the rights enumerated in this section . . . .

TEX. CONST. art. I, § 30(a), (d), (e)(emphasis added).

Both Quezada and amicus curiae take issue with the State's characterization of the complaining witness as being a "victim" for purposes of TEX. CONST. art. I, § 30(c) because there has been no judgment of conviction yet entered in this case. However, we conclude that Quezada and amicus curiae conflate the meaning of the term "victim" that appears in these related but separate bodies of law. Both cases cited by Quezada and amicus curiae are restitution cases

15

addressing the imposition and limitation of the type of restitution that may be ordered as a condition of probation. *See Martin v. State*, 874 S.W.2d 674, 677, 680 (Tex. Crim. App. 1994); *Lemos v. State*, 27 S.W.3d 42, 45 (Tex.App.—San Antonio 2000, pet. ref'd).

By contrast, Article I, Section 30(a)(1) of the Texas Constitution states that a crime victim has the right to be treated with fairness and with respect for the victim's dignity and privacy "throughout the criminal justice process." Notably, this constitutional language is far broader than the language used by the restitution provision which outlines the types of payments that a trial court may order as a condition of probation in relation to a crime for which the defendant has been charged, convicted and sentenced. When compared to the imposition of an order of restitution, a victim's constitutional right to be treated with fairness and respect for his or her dignity and privacy differs as the victims' constitutional right spans the entire judicial process and is not limited in time to the post-conviction timeframe. We find *Martin* and *Lemos* to be inapposite here for purposes of standing.

We further note that this is not the first time a prosecuting agency has brought a mandamus action challenging the propriety of a subpoena aimed at a complaining witness. Two of our sister courts entertained such actions and ruled in the State's favor on the merits. *State ex rel Wade v. Stephens*, 724 S.W.2d 141, 142 (Tex.App.—Dallas 1987, orig. proceeding)(granting State's mandamus to quash subpoena requiring aggravated sexual assault complainant to submit to a physical examination); *State ex rel Holmes v. Lanford*, 764 S.W.2d 593, 594 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding)(granting State's mandamus to quash order for victim in a criminal case to undergo a psychological examination). While Quezada is correct that standing was never directly challenged or mentioned in either of those cases, standing is jurisdictional nonetheless, and our sister courts have the continuing responsibility to determine whether they

16

have jurisdiction, even *sua sponte*. We take the Dallas and Houston Fourteenth Courts' respective rulings on the merits as implicit acknowledgments that both courts independently found the State had standing to bring the mandamus actions challenging the third-party subpoena.

We hold that by virtue of being a party to these proceedings, by virtue of the Crime Victim's Bill of Rights, and by virtue of our sister courts' implied recognition of the State's ability to bring these type of proceedings in the past, the State has standing to file a motion to quash a subpoena duces tecum aimed at a complaining witness.

## *II.*

### *Trial Court Authority to Ratify Subpoena*

It is long recognized that there is no generalized right to discovery in a criminal case. *See In re State*, 116 S.W.3d 376, 381 (Tex.App—El Paso 2003, orig. proceeding). If not done by agreement, discovery ordered in a criminal case must rest on a valid statutory or constitutional basis, or it must come from a valid exercise of a trial court's inherent authority. *Id*. A criminal discovery order made in the absence of statutory, constitutional, or inherent authority is void and subject to correction on mandamus review. *Id*.

### A.

### Statutory Authority

### *1.*

### *Subpoenas Duces Tecum (Article 24.02)*

We turn to the first potential statutory basis: the Texas Code of Criminal Procedure's subpoena duces tecum statute.

Article 24.01 dealing with the issuance of subpoenas in a criminal case generally states, in relevant part:

17

(a) A subpoena may summon one or more persons to appear:

   (1) before a court to testify in a criminal action at a specified term of the court or on a specified day; or

   (2) on a specified day:

      (A) before an examining court;

      (B) at a coroner's inquest;

      (C) before a grand jury;

      (D) at a habeas corpus hearing; or

      (E) in any other proceeding in which the person's testimony may be required in accordance with this code.

Article 24.02 deals with subpoenas duces tecum:

If a witness have in his possession any instrument of writing or other thing desired as evidence, the subpoena may specify such evidence and direct that the witness bring the same with him and produce it in court.

Finally, Article 24.03 sets out the necessary application procedure for obtaining a subpoena in a felony case:

(a) Before the clerk or his deputy shall be required or permitted to issue a subpoena in any felony case pending in any district or criminal district court of this State of which he is clerk or deputy, the defendant or his attorney or the State's attorney shall make an application in writing or by electronic means to such clerk for each witness desired. Such application shall state the name of each witness desired, the location and vocation, if known, and that the testimony of said witness is material to the State or to the defense. The application must be filed with the clerk and placed with the papers in the cause or, if the application is filed electronically, placed with any other electronic information linked to the number of the cause. The application must also be made available to both the State and the defendant.

A *subpoena duces tecum* is not to be used as a discovery weapon but as an aid to discovery based upon a showing of materiality and relevance. *Luvano v. State*, 183 S.W.3d 918, 924 (Tex.App.—Eastland 2006, no pet.). Issuance of the subpoena is a matter of right on written

18

application identifying the witness and on assertion that the testimony sought is material to the State or the defense. TEX.CODE CRIM.PROC.ANN. art. 24.03; *Shpikula v. State*, 68 S.W.3d 212, 221 (Tex.App.—Houston [1st Dist.] 2002, pet. ref'd).

The State lodges multiple complaints in this case stemming from the issuance and service of the subpoena duces tecum upon complaining witness Navarro. First, the State asserts that the procedure employed by Quezada violated Article 24.03 of the Texas Code of Criminal Procedure because he did not file an application for a subpoena despite the fact that this is a felony case nor provide notice to the State of a hearing. We agree. The subpoena should never have issued in this case because Quezada failed initially to file an Article 24.03 application. However, on mandamus review, we review the actions of the trial court judge and have no power to review the actions of a district clerk absent a showing that the district clerk's actions have interfered with our jurisdiction. *In re Sweed*, No. 08-17-00140-CV, 2017 WL 3167496, at *1 (Tex.App.—El Paso July 26, 2017, orig proceeding)(mem. op.). Further, as Quezada points out and as the State acknowledges, the trial court essentially ratified the subpoena with the actions it took, which essentially moots the State's complaints regarding an absence of an application or proper notice. Thus, the focus of our inquiry here is not on whether the actions of the public defenders were proper in the first instance, but rather, we consider instead whether the trial court had the authority to retroactively ratify those actions by its orders.

We find that Article 24.02 did not permit the trial court to ratify the subpoena under these circumstances. Nothing in the plain language of Article 24.02 authorized Quezada's attorneys or the trial court to use the subpoena process as a way to command possession of the complaining witness's cell phone at pretrial; engage in a search of it for evidence to use not only in this case, but also in a related sexual assault case; and then have the contents of the cell phone transcribed

19

in a "dump" conducted under the auspices of the Public Defender's Office. The plain language of the statute only allows a party to apply for a subpoena that compels a witness to attend a hearing and bring with him or her an item or thing to the hearing that is explicitly mentioned.

Indeed, comparing the language in Article 24.02 with the Texas Rules of Civil Procedure highlights certain distinctions between criminal and civil discovery processes in Texas. While Rule 205 of the Texas Rules of Civil Procedure allows a party to receive discovery directly from a nonparty by serving a subpoena requesting production of documents and tangible things, *see* TEX.R.CIV.P. 205.1(d), Article 24 of the Texas Code of Criminal Procedure does not authorize a similar type of unsupervised production unconnected to a set hearing. Rather, Article 24.02 provides a method by which the State or the defendant may direct a witness to bring "any instrument of writing or other thing desired as evidence" and to "produce it in court" at a hearing presided over by a judge. TEX.CODE CRIM.PROC.ANN. art. 24.02.

Few Texas courts have addressed the reach of an Article 24.02 subpoena duces tecum, but all that have done so have also found that a subpoena duces tecum only goes so far as to secure the availability of evidence in connection with a court hearing. In *Shpikula*, the Houston First Court of Appeals observed that although the trial court had not ruled on the defense motion to compel a custodian of records to comply with a subpoena duces tecum that sought intoxilyzer records to be produced at "counsel's office immediately[,]" it further noted,"[i]f the trial court had denied the motion, such a ruling would have been proper because chapter 24 was not the proper authority under which appellant should have sought production of the records." *Id*. at 216, 221 (opining that the motion was improper because it was done to force the pretrial production of documents and "not to compel the attendance of any witness or to secure documents at trial"). We agree with this assessment. Here, the subpoena was improper from its inception because it was not done to secure

20

evidence or testimony for a hearing, and as such, the trial court could not later ratify the defective subpoena.[6]

We also note that this understanding of how a subpoena duces tecum operates in a criminal case is shared across other jurisdictions as well. Although there is a dearth of Texas case law dealing in depth with the issue of criminal subpoenas, the State has directed our attention to a series of Colorado appellate cases interpreting an analogous statute, Colorado Rule of Criminal Procedure 17. While Quezada is correct that the Colorado Rules of Criminal Procedure are not identical to the Texas Code of Criminal Procedure—Colorado's rules are patterned off the Federal Rules of Criminal Procedure whereas Texas's rules are not—Colorado Rule 17 dealing with subpoenas duces tecum is drafted substantially similar to Article 24.02 in that both Colorado Rule 17 and Article 24.02 only mention the right to compel a witness to bring tangible evidence into court.[7] In interpreting a rule of criminal procedure governing the issuance of a subpoena duces

---

[6] In *Martin v. Darnell*, a third-party witness filed a writ of mandamus seeking to direct the trial court to quash a subpoena duces tecum aimed at obtaining the witness's financial records. *Martin v. Darnell*, 960 S.W.2d 838, 840 (Tex.App.—Amarillo 1997, orig. proceeding). The *Martin* court held that as a matter of statutory interpretation, a subpoenas duces tecum issued pursuant to Chapter 24 did not authorize pretrial discovery against third parties. *Id*. at 841-42. We will not go so far as to hold, as did our sister court in *Martin*, that all potential pretrial discovery by defendants is foreclosed. As the concurrence points out, there may be other methods by which a defendant could obtain material where the proper requisites are established. However, because of the procedural posture of this case, we limit our discussion to the factual scenario presented here.

[7] Colorado Rule of Criminal Procedure 17 states, in relevant part:

RULE 17. SUBPOENA

In every criminal case, the prosecuting attorneys and the defendant have the right to compel the attendance of witnesses and the production of tangible evidence by service upon them of a subpoena to appear for examination as a witness upon the trial or other hearing.
. . .
(c) For Production of Documentary Evidence and of Objects. A subpoena may also command the person to whom it is directed to produce the books, papers, documents, photographs, or other objects designated therein. The subpoenaing party shall forthwith provide a copy of the subpoena to opposing counsel (or directly to the defendant if unrepresented) upon issuance. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents, photographs, or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, photographs, or objects or portions thereof to be inspected by the parties and their attorneys.

tecum, the Supreme Court of Colorado described the function of such process this way:

> [A] subpoena duces tecum does not disturb the recipient's possession of property or the right to privacy. The person to whom the subpoena is directed must have the papers with him at the designated time and place so that they may be used in evidence, but he is not required to surrender possession of them, unless they have been subpoenaed by a grand jury.

*People v. Spykstra*, 234 P.3d 662, 668 (Colo. 2010)(citing 2 Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure, Criminal Rules § 275 (4th ed. 2009)).

The Colorado Supreme Court's description of the purpose of a subpoena duces tecum squares with the language in our own statute. An Article 24.02 subpoena in a criminal case does not allow a party to seize documents or other tangible things from a witness and dispossess said witness of the property requested. While we do not find that the trial court abused its discretion by holding a status hearing related to the subpoena, we do find that Article 24.02 did not provide the trial court with explicit statutory authority to issue the order dispossessing the witness of her phone to permit an investigatory search that included seizure of stored data absent a prior showing of materiality and favorability of the evidence at a properly noticed hearing that includes the participation of both parties.

*2.*

*Other Statutory Criminal Discovery Theories*

In its amicus curiae brief,[8] the Texas Criminal Defense Lawyers Association offers another possible statutory route attempting to justify the trial court's actions—Chapter 39 of the Texas Code of Criminal Procedure. TCDLA argues that Article 39.02 allows criminal defendants to

---

COLO. R. CRIM. P. 17.

[8] The State did not file any written response addressing the amicus curiae brief or Quezada's response.

22

depose a witness in a criminal proceeding.[9]  Further, TCDLA states that Article 39.04 establishes that "[t]he rules prescribed in civil cases for issuance of commissions, subpoenaing witnesses, taking the depositions of witnesses and all other formalities governing depositions [i.e. the Texas Rules of Civil Procedure] shall, as to the manner and form of taking and returning the same and other formalities to the taking of the same, govern in criminal actions, when not in conflict with this Code." TEX.CODE CRIM.PROC.ANN. art. 39.04.  In the eyes of TCDLA, because the Texas Rules of Civil Procedure allow for a party to use a subpoena to compel a nonparty to produce evidence, *see generally* TEX.R.CIV.P. 205, and because Chapter 39 incorporates the Texas Rules of Civil Procedure by reference to the extent they do not conflict with the Texas Code of Criminal Procedure, Quezada, they argued, had "[t]he ability to do everything a civil litigant can do"— including subpoenaing the complaining witness's phone.

"A deposition under Article 39.02 is of such an extraordinary nature that little jurisprudence exists to govern its application." *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996).  Though there is little case law here to guide us, because of Article 39.04's placement within Chapter 39, we construe Article 39.04's incorporation of the Texas Rules of Civil Procedure as relating to *deposition proceedings* authorized by Article 39.02 of the Texas Code of Criminal Procedure.  In other words, if the State or a defendant seeks to depose a witness and file an application to do so with the trial court under Article 39.02, at that point, the Texas Rules of Civil Procedure would govern the deposition proceedings per Article 39.04. *Cf. Vanwinkle v. State*, No. 02-09-00200-CR, 2010 WL 4261603, at *6 (Tex.App.—Fort Worth Oct. 28, 2010, pet.

---

[9] The original version of the Code of Criminal Procedure passed by the Texas Legislature in 1856 "had provisions for the taking and use of depositions," though until the Code was revised in 1965, "depositions were designed primarily and perhaps exclusively to preserve testimony and procure it from infirm and out-of-State witnesses." *See* 42 George E. Dix and John M. Schmolesky, Texas Practice Series: Criminal Practice & Procedure § 27:106 (3d ed. April 2019 Update). "Changes made in that revision—now primarily embodied in Article 39.02—render depositions at least potentially available to defendants for the purpose of learning about and preparing to meet the State's trial evidence." *Id*.

ref'd)(mem. op.)(not designated for publication)(discussing criminal depositions and noting that civil rules applied in criminal deposition proceedings); 2 D. Mark Elliston & Terrence W. Kirk, Texas Practice Guide: Criminal Practice & Procedure § 19:68 (2019 ed.)(civil rules apply to oral or written interrogatory depositions in criminal cases). By its terms, however, Article 39.02 provides that it "is limited to the purposes stated in Article 39.01[,]" which in turn relates solely to an examining trial or a jury of inquest. *See* TEX.CODE CRIM.PROC.ANN. arts. 39.01 and 39.02.

Here, notwithstanding the limitation of a deposition to either an examining trial or jury of inquest, it is undisputed that Quezada never made a written request to take Navarro's deposition at the time the trial court issued its order requiring dispossession of the phone and limited review of its contents. We further note that the trial court also never ordered the witness to be deposed in fact, which cuts against the Article 39.04 deposition rationale. Absent a proper request for deposition to be duly taken before an examining trial or other permitted proceeding, we hold that Article 39.04's incorporation of the Texas Rules of Civil Procedure does not apply generally to a subpoena deuces tecum.[10] Because any potential ability to request Texas Rules of Civil Procedure-

---

[10] We further note that Article 39.02 does not incorporate the Texas Rules of Civil Procedure wholesale in a deposition proceeding; a criminal litigant's discovery powers are still cabined by overriding statutory restrictions contained in the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC ANN. art. 39.04. For example, unlike in civil cases, Article 39.02 depositions in criminal cases require a sworn application with an affidavit that states facts showing "good reason" for taking the witness's deposition, as well as explicit trial court pre-approval of discovery based on facts made known at a hearing to determine good reason. *See* TEX.CODE CRIM.PROC ANN. art. 39.02; *Garcia v. State*, Nos. 11-12-00091-CR, 11-12-00092-CR, 2014 WL 1778252, at *6 (Tex.App.—Eastland Apr. 30, 2014, no pet.)(mem. op.)(not designated for publication). "Good reason" has been defined to include circumstances such as "the refusal of a witness who possesses information critical to a significant factor at trial, or who has information exclusively within that witness's knowledge, to talk to the defendant's counsel (or investigator)[.]" *Garcia*, 2014 WL 1778252, at *6.

Even if the deposition provision somehow applied here in the absence of an explicit request for a deposition and could open the door to the use of the Texas Rules of Civil Procedure, the statutory language of Article 39.02 still would have required an authorizing order from the trial court to have been supported by evidence of "good reason," which caselaw has explained means that a witness *who refuses to voluntarily talk to the defense* possesses information critical to a significant factor at trial or information exclusively within the knowledge of a witness. *See Janecka v. State*, 937 S.W.2d 456, 469 (Tex.Crim.App. 1996).

There is no evidence in the mandamus record here showing that the complaining witness refused to cooperate or speak with the attorneys from the Public Defender's Office or their investigator, and there is no evidence or argument that the witness exclusively possessed information that could not be obtained through means other than by subpoena.

24

type production of documents and other tangible things from nonparties under Article 39.04 requires a predicate deposition request under Article 39.02, the mandates of Article 39.02 were not met. *Cf. Reichle v. State*, No. 06-14-00073-CR, 2015 WL 392846, at *8 (Tex.App.—Texarkana Jan. 30, 2015, pet. ref'd)(mem. op.)(not designated for publication)(addressing merits of Rule 204 request for a medical examination where defendant had filed a prerequisite Article 39.04 application for deposition).

Finally, even if TCDLA is correct and Article 39.04 fully incorporates the Texas Rules of Civil Procedure into criminal proceedings generally and gives the trial court the free-floating ability to order the cell phone to be "dumped" by the Public Defender's Office's expert upon the defense's request, the Rules of Civil Procedure themselves contain various timing and notice strictures that must be followed if a request for production accompanied by a subpoena is to be deemed proper. With respect to parties seeking production of documents and tangible things from nonparties without deposition, the Rules impose the requirements that, *inter alia*, "[a] notice to produce documents or tangible things under Rule 205.3 must be served at least 10 days before the subpoena compelling production is served[,]" TEX.R.CIV.P. 205.2; that production occur at "a reasonable time and place[,]" TEX.R.CIV.P. 205.3(b)(2); and that the nonparty has the right to withhold privileged information, lodge objections, and seek protective orders as permitted by the Rules. TEX.R.CIV.P. 176.6(c)-(e), 205.3(d). It is apparent from this record that no such protections

---

We acknowledge that we are in an awkward position on mandamus review given the trial court's sealed order regarding the ex parte meeting with Quezada's attorneys. Even so, the trial court's public order specifies that the targeted material the trial court reviewed in camera was communications the complaining witness made to Quezada, Quezada's girlfriend, and Quezada's mother from February 2019 through May 2019, and that the court reviewed messages Navarro may have sent to Quezada through WhatsApp, Instagram, Facebook Messenger, Text Now, and ordinary text messages. Presumably, Quezada himself would have access to the same messages contained on the complaining witness's phone as the recipient of those messages. The messages could also have been obtained from Quezada's girlfriend and Quezada's mother. Absent an adequate explanation, the fact that Quezada himself already presumably had access to the subject messages cuts against a finding of reasonableness on these facts.

were followed here. There are no indications that Quezada's attorneys or their investigator made any attempt to reach out to the complaining witness prior to issuing the subpoena. Instead, it appears that their first interaction occurred when the complaining witness was served with a duly issued subpoena on July 2, 2019, which commanded her to appear at the 243rd District Court the next day at 10:30 a.m., with any and all cell phones she had used from February 2019 through May 2019, and to remain there from day to day until discharged by due course of law. Plainly, pursuant to Rule 205.3, a day's notice is not reasonable, especially when Rule 205.2 requires at least 10 days' notice between a request for production and a subpoena compelling production to allow a nonparty to determine if they wish to withhold privileged information, lodge objections, or seek protective orders. Simply put, even if what the amicus curiae says is true and the Texas Rules of Civil Procedure apply in this criminal proceeding, it is clear that Quezada's attorneys did not in any event follow these rules. Absent Quezada's compliance with these mandates, it was improper for the trial court to ratify by court order this overzealous use of the subpoena power ordinarily afforded to defense counsel. *Cf. Reichle*, 2015 WL 392846, at \*8 (holding that defendant could not use Article 39.04 as a way to compel a nonparty to undergo a medical examination under TEX.R.CIV.P. 204 because Rule 204 itself did not permit such an action).

Quezada's request for a Texas Rules of Civil Procedure-type subpoena duces tecum failed here, either because it was not made in connection with a predicate request for a deposition supported by proper purpose and good reason under Article 39.02, or else, because in no measure did it comply with the mandates of the Texas Rules of Civil Procedure themselves. For these reasons, the trial court's order could not have rested on authority provided in Chapter 39. In short, there was no apparent statutory basis for the challenged orders of the trial court.

**B.**

26

**Constitutional Authority**

Having dealt with statutory authority, we next turn our attention to potential constitutional grounds permitting the trial court's orders.

*1.*

*Right to Compulsory Process*

In his response to the State's mandamus application, Quezada largely abandons the arguments he raised in the trial court in support of the subpoena and instead focuses his defense of the trial court's order almost entirely on his constitutional right to compulsory process. We disagree with Quezada that the right to compulsory process permitted the ratification of the defense's attempt to force the production of the complaining witness's phone under these circumstances.

The Sixth Amendment contains several substantive clauses, including the familiar and well-litigated right to confrontation, and the more obscure right to compulsory process.[11] By virtue of the Compulsory Process Clause, "criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987). As described by the Court of Criminal Appeals, the Sixth Amendment right to compulsory process "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the

---

[11] The Sixth Amendment to the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

27

truth lies." *Coleman v. State*, 966 S.W.2d 525, 527 (Tex. Crim. App. 1998). "The Sixth Amendment does not guarantee, however, the right to secure the attendance and testimony of any and all witnesses; rather, it guarantees only compulsory process for obtaining witnesses whose testimony would be both material and favorable to the defense." *Id*. at 527-28. To exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness testimony sought would be both material and favorable to the defense. *Id*. at 528.

Because the State has not sought an unsealing of the ex parte hearing, it asserts no argument at this juncture as to whether the defense met its burden to show that the evidence sought was material. Thus, we will not conduct a review on the merits of the trial court's decision on materiality; instead, we will presume for argument's sake that the evidence was material and favorable to the defense. More narrowly, the State focuses here on the scope of relief the trial court in fact granted. The State argues that even if the evidence subject to the trial court's order is material and favorable to the defense, the Compulsory Process Clause only guarantees the right to compel the attendance of witnesses and the production of evidence *at trial* or as permitted by statute, not the right to pretrial discovery.

We agree that the current state of Compulsory Process Clause case law suggests the State may be correct. The right to compulsory process gives defendants "the right to secure *the attendance* of witnesses whose testimony would be both material and favorable to the defense." *Emenhiser v. State*, 196 S.W.3d 915, 921 (Tex.App.—Fort Worth 2006, pet. ref'd)(emphasis added)(upholding quash of subpoena to Denton ISD principal seeking names and addresses of all students in same class as child sexual assault complainant for presentment at 1:30 p.m. the same day subpoena was issued while trial was pending). There is no mention in case law of the right to

28

compulsory process allowing the dispossession and copying of data from a nonparty's cell phone in an attempt to engage in unfettered pretrial discovery. While we do not foreclose the potential for the right to compulsory process to provide extra-statutory pretrial relief in certain circumstances, Quezada does not point to any authority that would contravene the State's authority and suggest the right to compulsory process would apply here at pretrial, nor does Quezada argue anything other than the fact that the trial court found the evidence was material and favorable to the defense. True enough—but under the Compulsory Process Clause as we currently understand it, that, at most, would entitle him to secure the attendance of the complaining witness and her cell phone at trial or as otherwise permitted by statute. He has not explained how the Compulsory Process Clause allows him to go beyond the relief he would have gotten had he followed the mandates of the subpoena statute.

Finally, to the extent the Compulsory Process Clause may apply beyond the right to secure attendance at trial or for other permitted proceeding, the circumstances of this case and the scope of the order render it qualitatively different. We have recognized that the United States Supreme Court plainly noted that "a defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the government's files." *See In re State*, 116 S.W.3d 376, 381-82 (Tex.App.—El Paso 2003, orig. proceeding)(citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987)). Given that defendants cannot claim that right against the State even though *Brady* entitles defendants to certain evidentiary material, we similarly decline to recognize the right of a defendant—under the compulsory process clause's undefined reach—to have the authority to conduct an unsupervised search through a complaining witness's cell phone and its data. A complaining witness has the right to privacy under the Texas Constitution, *see* TEX. CONST. art. I, § 30(a)(1), and persons generally have a reasonable expectation of privacy in their cell phone. *See*

29

*Butler v. State*, 459 S.W.3d 595, 601 n.3 (Tex.Crim.App. 2015). "Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on" somebody's person. *Riley v. California*, 573 U.S. 373, 393 (2014). Cell phones have "immense storage capacity" and are essentially "minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Id.*

Though the trial court attempted to limit its order permitting a data dump to certain areas of communication, the order, nonetheless, allows the defendant's investigator to have unsupervised access to the phone of the complaining witness. While we recognize the right of a defendant to present a defense, this arrangement is not acceptable. If trial court supervision is required in the context of *Brady*, we see no reason why similar supervision should not be required in situations like this, where the potential for abuse and intimidation of a witness remains ever concerning. A defendant has no constitutional right to rifle through the State's file unsupervised; a defendant similarly has no right to rifle unsupervised through a complaining witness's phone.

Because the scant authorities we have seen which have reviewed the scope of the Compulsory Process Clause have thus far limited its application to trial proceedings, we do not find it apparent that a need for this evidence justifying this extraordinary procedure was established on this record, and because the order permits an unsupervised search of the complaining witness's cell phone in violation of the complaining witness's right to privacy, we find that the Compulsory Process Clause did not provide the trial court with the authority to enter the order at issue, both in terms of substance and in terms of scope.[12]

---

[12] Both parties reference the case *Luvano v. State*, 183 S.W.3d 918 (Tex.App.—Eastland 2006, no pet.), which deals with the trial court's quashal of a defense subpoena duces tecum seeking to collect a DNA sample from a witness. The court of appeals upheld the denial because it did not find that the witness's DNA sample would produce material evidence; the fact that the witness's DNA may have been found on a shirt would not have been unusual because the

*2.*

*Brady Disclosure*

In his response to the mandamus petition, Quezada also raises a *Brady*[13] disclosure theory. Quezada insists that because the State has inserted itself into this controversy between Quezada and the complaining witness on behalf of the complaining witness, the State is effectively acting as the complaining witness's attorney, and as the complaining witness's virtual attorney, the State essentially has constructive control over the complaining witness's phone. As such, Quezada contends that under *Brady*, if we grant mandamus relief and the cell phone is returned to the complaining witness, the State should be forced to disclose the contents of the cell phone to the defense because it is acting as the complaining witness's attorney and it will have constructive possession of material evidence. We have no jurisdiction to address this thought experiment about the State's obligations on mandamus review,[14] other than to say that to the extent Quezada is arguing the trial court's actions in compelling the phone dump were justified under *Brady*, we disagree.

The District Attorney's Office and its assistants are not the complaining witness's attorney; they are representatives of the State, and as representatives of the State, they have the right to assert the complaining witness's right to privacy under the Crime Victims' Bill of Rights. *See* TEX. CONST. art. I, § 30. This does not make them into the complaining witness's attorney, nor does it turn the complaining witness into the State's agent for *Brady* purposes. Further, *Brady* requires

---

witness and the defendant lived together and had an intimate relationship. *Id.* at 924-25. *Luvano* is of limited application here because the State is not challenging the materiality of the evidence.

[13] *Brady v. Maryland*, 373 U.S. 83 (1963).

[14] *See In re Flores*, No. 08-19-00205-CR, 2019 WL 3759468, at *1 (Tex.App.—El Paso Aug. 9, 2019, orig. proceeding)(mem. op.)(not designated for publication)(court of appeals has mandamus jurisdiction only over certain judges within its geographic jurisdiction, or in the event issuing the writ is necessary to enforce or prevent interference with the court's jurisdiction).

31

that the subject information sought be in the possession of the State or its agents. There is no allegation on this record that the material is in the State's possession. If it was, we would agree with the defense that the State has an obligation to disclose it. But because there is no evidence or allegation that the State had access to the material on the complaining witness's phone, *Brady* does not apply.

## C.

### Inherent Authority

In order to obtain mandamus relief, the State must negate all potential bases for the trial court's authority. The State has shown to our satisfaction that the trial court did not have the statutory authority under the Texas Code of Criminal Procedure's subpoena and deposition provisions to order the data dump of the phone in question. Likewise, the State has established that the constitutional right to compulsory process as commonly understood at the present time does not extend so far as to allow the trial court's order to stand. There exists one more possible basis for upholding the trial court's action: the inherent authority of the trial court. The State contends the trial court lacked inherent authority to issue this order. We agree.

In addition to the express grants of judicial power, a court may also exercise inherent and implied powers. *In re State*, 564 S.W.3d 58, 67 (Tex.App.—El Paso 2018, orig. proceeding). The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity. *Id.* Texas courts have recognized inherent power in the following instances: to change, set aside or otherwise control their judgments; to summon and compel the attendance of witnesses; to regulate the admission and practice of law; and to provide personnel to aid the court in the exercise of its judicial function. *Id.* The implied powers of a court do not stand on an independent basis as do

inherent powers. *Id*. Though not directly or expressly granted by constitutional or legislative enactment, implied powers are those which can and ought to be implied from the express grant of power. *Id*. Because there are no express grants of power that would authorize the trial court to enter the order at issue here, and because Quezada does not argue implied authority in his response to the State's petition, the issue of implied powers is not before this Court. As such, we turn our attention to the issue of inherent authority.

Our sister courts have held that the trial court has no inherent authority to direct a complaining witness to comply with discovery requests in the absence of constitutional or statutory authority. *State ex rel Wade v. Stephens*, 724 S.W.2d 141, 144 (Tex.App.—Dallas 1987, orig. proceeding)(trial court had no inherent authority to order aggravated sexual assault complainant to submit to a physical examination); *State ex rel Holmes v. Lanford*, 764 S.W.2d 593, 594 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding)(recognizing that while Article 39.14 may not define the totality of criminal discovery powers in Texas, the trial court had no inherent authority to order victim in a criminal case to undergo a psychological examination). We agree with the holding in *Lanford*. While there remains some potential statutory and constitutional avenues for nonparty discovery in criminal cases, in the absence of such statutory or constitutional authority on this record, however, the trial court had no inherent authority to order the complaining witness to be dispossessed of her cell phone for purposes of pretrial discovery.

Because the order lacked a statutory, constitutional, or inherent authority predicate, mandamus relief is appropriate here. The State's mandamus issue is sustained.

*Coda*

Nothing in the Code of Criminal Procedure "prohibit[s] the parties from agreeing to discovery and documentation requirements equal to or greater than those required" by the Code

33

itself. *See* TEX.CODE CRIM.PROC.ANN. art. 39.14(n). Indeed, many issues related to discovery are handled informally, which makes case law dealing with formal criminal discovery disputes relatively rare. Nonetheless, this case represents the latest in a spate of discovery disputes between the El Paso County District Attorney's Office and the members of the local criminal defense bar that have ended up before this Court on mandamus review. *See, e.g., In re State*, No. 08-19-00151-CR (dispute over the scope of State disclosure under the Michael Morton Act); *In re El Paso County Public Defender*, No. 08-19-00296-CR (same).

We do not know if this uptick in mandamus litigation is an aberration that is limited to this district, or whether it represents a new trend emerging across the state. While the Texas Supreme Court has stated that mandamus relief as a selective, extraordinary procedure can correct clear errors in exceptional cases and afford appropriate guidance to the law as needed without requiring the disruption and burden that comes with blunt legislative enactments, *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 137-38 (Tex. 2004)(orig. proceeding), if this trend of pretrial discovery litigation in criminal cases continues, then legislative intervention to define the ground rules applicable will not only be beneficial but necessary, to provide litigants, trial courts, and appellate courts sitting on mandamus review, with better guidance, better structure, better protections for third parties, and better ways for criminal defendants to vindicate their right to information and evidence.

The Federal Rules of Criminal Procedure provide detailed procedures for dealing with subpoenas to nonparties in criminal cases, including a provision that provides district courts with the explicit authority to "quash or modify the subpoena if compliance would be unreasonable or oppressive[,]" FED.R.CRIM.P. 17(c)(2), and a provision added in 2008 mandating court approval of subpoenas served on third parties that would require "the production of personal or confidential

information about a victim" and provide the victim with notice and the opportunity to respond before such a subpoena is granted. FED.R.CRIM.P. 17(c)(3) & cmt. on 2008 Amendments. By comparison, the subpoena duces tecum statute in the Texas Code of Criminal Procedure has remained largely unchanged since it appeared in current form in the first major recodification of the Code as Article 462 in 1925.[15] To this point, the rarity of criminal discovery litigation in Texas has meant that the Texas Code of Criminal Procedure's discovery provisions have endured, in some cases unchanged for nearly a century. It may be time for the Legislature to review whether these statutes still function in a way that promotes justice.

Finally, while we understand the frustrations of defense counsel in attempting to conduct investigations into their clients' cases to meet the constitutional duty to provide effective assistance of counsel, our opinion should not be read as an endorsement of the tactics used here. Quite the opposite—we are deeply troubled by what has transpired. To properly obtain a subpoena of a witness in this felony case, Quezada's attorneys were obligated to file an application with the District Clerk of the court, who in turn was then obligated to ensure that the application filed was made available to the State with all other papers of the case. *See* TEX.CODE CRIM.PROC.ANN. art. 24.03. The application itself required certain information to include the desired witness's name, the location and vocation, if known, and that the testimony of said witness was material to the

---

[15] See https://www.sll.texas.gov/assets/pdf/historical-statutes/1925/1925-4-code-of-criminal-procedure-of-the-state-of-texas.pdf (1925 Texas Code of Criminal Procedure available through the Texas State Law Library's Texas Historical Statutes Project).

The language first appeared in Article 526 of the 1911 Texas Code of Criminal Procedure:

> Art. 526. [514] **What it may contain.**—A subpoena may contain the names of any number of witnesses residing in the same county to which it is issued; and, if a witness have in his possession any instrument of writing or other thing desired as evidence, the subpoena may specify such evidence and direct that the witness bring the same with him and produce it in court.

https://www.sll.texas.gov/assets/pdf/historical-statutes/1911/1911-4-code-of-criminal-procedure-of-the-state-of-texas.pdf (1911 Texas Code of Criminal Procedure available through the Texas State Law Library's Texas Historical Statutes Project).

defense. *See id.* The defense team's failure to do so in this instance was a clear violation of the subpoena statute. As for the additional request for production of the witness's cell phone, Article 24.02 only authorizes the issuance of a subpoena duces tecum to compel a witness to bring with them such item that is desired as evidence and produce it in court. *See id*. art. 24.02. Quezada's use of a subpoena duces tecum to obtain a complaining witness's cell phone outside a courtroom and *not* in connection with any pending judicial proceeding is clearly outside the bounds of what either Article 24.02 or 24.03 authorize. It was only by a chance occurrence arising from the trial court ratifying the subpoena that Quezada's attorneys were otherwise thwarted from acting under purported color of law to impermissibly obtain the witness's cell phone and its stored data. The power to issue a subpoena under color of law comes with the reciprocal duty to refrain from abusing it or using it for an ill-advised purpose. The Texas Code of Criminal Procedure lays out the basic mandates. Those mandates must be followed, and if they are not, counsel must have a compelling reason supported by controlling authority to justify such a departure from the plain language of the statute. No such reason exists on the record before us.

## CONCLUSION

Without the proper procedural predicates being first satisfied, the trial court lacked the statutory, constitutional, or inherent authority to order the complaining witness in this case to turn her cell phone over to the El Paso County Public Defender's Office for inspection and copying of limited data as pretrial discovery. We conditionally grant the writ of mandamus and direct the trial court to vacate the July 8, 2019 and July 9, 2019 orders on Defendant's Subpoena Duces Tecum and forthwith return the cell phone to the custody of the complaining witness. The writ of mandamus will not issue unless Respondent fails to comply with this opinion.[16]

---

[16] The Court's stay order is hereby lifted in its entirety.

36

GINA M. PALAFOX, Justice

March 13, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.
Alley, C.J., concurring

(Publish)